UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN B. ORDILLE, INC., et al.,

                Plaintiffs,

v.                                       **DECISION AND ORDER**
                                           **12-mc-54S**

LENNY PERRY'S PRODUCE, INC., et al.,

                Defendants.

## I. INTRODUCTION

This matter, involving PACA[1] trust claims, was referred to United States Bankruptcy Judge Michael J. Kaplan, pursuant to 28 U.S.C. § 157(a). On August 14, 2012, Judge Kaplan issued Findings of Fact and a Report and Recommendation relating to Debtor/Defendant Lenny Perry Produce's objections to various creditor claims, and Creditor Weis-Buy's motion for judgment.

Presently before this Court are objections by creditors Wendell Roberson Farms, Inc. (Docket No. 3), and Weis-Buy (Docket No. 5), to the Report and Recommendation. The objections are fully briefed, and the matter is now before this Court for review. For the reasons stated below, the Court concurs with the findings and recommendations contained in the Report and Recommendation.

---

[1] The Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §§ 499a *et seq.*

1

## II. BACKGROUND

By Order dated September 16, 2009, this Court established a PACA Trust Claims Procedure to, *inter alia*, allow PACA claimants to establish their rights as qualified PACA creditors. No. 09-MC-56S, Dkt. No. 3.

Wendell Roberson Farms and Weis-Buy each filed, with the Bankruptcy Court, a PACA Proof of Claim, No. 09-AP-1015, Dkt. No. 27 (Wendell); No. 09-BK-10297, Clm. No. 67 (Weis-Buy), to which Defendant objected. Judge Kaplan recommends that Defendant's objection as to Wendell Roberson Farms be sustained and its claim stricken in its entirety, and that Weis-Buy's claim be denied insofar as it seeks attorneys' fees and collection costs.

A district court reviews those portions of a report and recommendation to which a party has timely objected under a *de novo* standard of review. 28 U.S.C. § 157(c)(1). Each claimant's objection will be examined, in turn.

## III. DISCUSSION

### A. PACA's Purpose and Requirements

PACA was enacted in 1930 to regulate the sale and marketing of produce in interstate commerce. American Banana Co., Inc. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 36 (2d Cir. 2004); Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc., 336 F.3d 410, 413 (5th Cir. 2003). In the early 1980s, Congress expressed concern for farmers and growers of perishable commodities, who, because of the need to sell their products quickly, were vulnerable to buyers whose creditworthiness was difficult to evaluate prior to a sale. H.R. REP. NO. 98-543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N.

405, 406-407; Reaves, 336 F.3d at 413 (citing Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1066 (2d Cir. 1995)). Congress amended PACA in 1984 to create a statutory trust in favor of produce sellers. 7 U.S.C. § 499e(c). Under the 1984 provision, immediately upon a seller's delivery of perishable commodities, the commodities, products derived from the commodities, and the proceeds from their sale are to be held by the buyer in a nonsegregated "floating" trust for the benefit of unpaid suppliers who meet the applicable statutory requirements. American Banana, 362 F.3d at 38. If entitled to PACA protection, a seller's interest in the commodities and sales proceeds is superior to that of other creditors, including secured creditors. Id. at 37.

To obtain the extraordinary protection of the trust provision, a seller must ordinarily require payment for the produce "within 10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). "The maximum time for payment for a shipment to which a seller, supplier, or agent can agree, *prior to the transaction*, and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities." Id., § 46.46(e)(2) (emphasis added). In addition to selling on the basis of cash or short-term credit, a seller must also give the buyer written notice of its intent to preserve its trust benefits. The seller may do so in one of two ways: (1) provide written notice of intent to preserve the trust to the trustee within thirty calendar days after payment must be made, 7 U.S.C. § 499e(c), or (2) include on its ordinary and usual invoices the statement:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 [ ]. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.", 7 U.S.C. § 499e(d).

A buyer who does not make a "full payment promptly"—*i.e.*, within a prescribed statutory period or a validly agreed to period—commits a violation of the Act. *Id.*, § 46.2(aa).

**B.   Wendell Roberson Farms' Objections**

On August 28, 2009, Wendell submitted to the Bankruptcy Court a PACA Proof of Claim for $5,579.23, supported by six invoices[2] for shipments of produce to Defendant made in 2008. The claim form identifies the original payment terms as 10 days. The supporting invoices each include a shipment date, an invoice date that is from two to nine days after the ship date, and the statement: "Pay Terms: Net 30." Printed at the bottom of each invoice is the trust language required by 7 U.S.C. § 499e(d).

Judge Kaplan recommends disallowing Wendell's claim on the ground that all ship dates precede the invoice dates, and in offering a term of "Net 30" from invoicing, Wendell extended to Defendant a payment term of more than 30 days. Because the extended term was not memorialized in a pre-transaction agreement, Judge Kaplan concluded Wendell had failed to preserve its PACA trust claim. Wendell objects, contending it is precisely because no written agreement exists that the "Net 30" printed on its invoices is without effect, and the applicable payment term is the statutory default net 10 days.

The sole issue on this limited objection is whether Wendell's stated invoice terms amounted to a waiver of its right to a PACA trust claim. According to Wendell, Judge Kaplan erred in concluding that American Banana controls here, and it urges this Court to follow the reasoning of two non-binding cases from outside the Second Circuit.

---

[2] Two of the invoices are assigned the same number, 51442, recite the same ship and bill dates, and describe the same products and quantities. It appears that one invoice included a billing error which was corrected in the second, calling into question whether Wendell is seeking duplicate payment for a single delivery.

In American Banana, the produce buyer, who had defaulted on payments, proposed a debt-repayment plan. The creditors orally accepted the proposal and agreed to forbear from enforcing their PACA trust rights in the interim. 262 F.3d at 39. The Second Circuit first noted that "[s]ellers who offer payment periods of longer than thirty days are not entitled to PACA trust protection." Id. at 43. It then went on to consider whether the 30-day maximum would apply to post-default agreements, as well as to the pre-transaction agreements referred to in PACA and its regulations. Id. The Second Circuit concluded that it does, reasoning that, regardless of the timing, the offer of a payment period in excess of 30-days is "inconsistent with the prompt-payment objective, which is fundamental to PACA." Id. at 44. The Circuit Court went on to reject the district court's conclusion that an oral agreement does not constitute a waiver, finding that "a failure to reduce to writing an agreement that violates PACA[] should not result in the preservation of the trust, where the same agreement, if memorialized, would have resulted in forfeiture of such protection." Id. at 46-47.

After the Second Circuit and a number of other federal courts invalidated the trust rights of creditors who agreed to accept payments over time after the buyer defaulted, the Secretary of Agriculture amended its PACA regulations to clarify that the 30-day maximum payment period requirement of 7 C.F.R. § 46.46(e)(2) applies to pre-transaction agreements only. See 76 Fed. Reg. 20217 (Apr. 12, 2011). In other words, where a seller initially perfects its trust rights pursuant to 7 U.S.C. § 499e, a post-default agreement to accept payment beyond 30 days will not invalidate those rights. To the extent the amended regulation has abrogated American Banana, it is with regard to post-default terms only.

Here, the question is whether Wendell secured its trust rights in the first instance. This Court accepts Judge Kaplan's recommendation that it did not, because it extended to Defendant, via its invoices, a payment term in excess of 30 days.

As noted, PACA and its regulations require prompt payment terms, usually 10 days from delivery and acceptance. A seller may extend the payment term, and still preserve PACA trust rights, but only if the term does not exceed 30 days, and the parties enter into a written, pre-transaction agreement meeting the specified criteria. Wendell urges that, because it did not memorialize the "Net 30" payment term in a pre-transaction agreement, it can unilaterally offer to extend payment more than 30 days after a buyer accepts a delivery without jeopardizing its trust rights.

It is well-established that "[s]ellers who[, prior to default by a buyer,] offer payment periods of longer than thirty days[,] are not entitled to PACA trust protection." American Banana, 262 F.3d at 43. Moreover, this Court and at least one other district court in this Circuit have applied American Banana's reasoning to conclude that a failure to memorialize in a written agreement a seller's unilateral offer of terms in excess of the 30-day maximum allowed under PACA should not result in the preservation of the trust, where a written agreement stating those same terms would result in the forfeiture of trust protection. *See* Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc., 2006 U.S. Dist. LEXIS 48004, at *9-10 n.3 (W.D.N.Y. July 13, 2006) (seller preserved trust benefit using invoice method, even where it was unclear whether 10-day payment term was from date of acceptance or date of invoice, because lag time between delivery and invoice was not more than a day or two and so would not have resulted in a payment term of more than 30 days); DiMare Homestead, Inc. v. Alphas Co. of N.Y., Inc., 2012 U.S. Dist. LEXIS 48546,

at **34-40 (S.D.N.Y. Apr. 5, 2012) (seller did not preserve PACA rights for invoices generated "well after delivery" that allowed defendant to render payment mor than 30 days after shipment); A&J Produce Corp. v. City Produce Operating Corp., 2011 U.S. Dist. LEXIS 148719, at *13-15 (S.D.N.Y. Dec. 23, 2011) (question of fact existed as to whether plaintiff, through parties' course of dealing, agreed to accept payment more than 30 days after delivery such that it was not entitled to PACA trust protection).

The non-binding authority Wendell cites does not convince the Court that Judge Kaplan's findings and recommendation are clearly erroneous or contrary to law. In re: Atlanta Egg & Produce, Inc. is not instructive here. That district court specifically stated that it did not "reach the situation where the invoice provided for a payment period in excess of 30 days because that situation [was] not before the Court in [that] case." 321 B.R. 746, 755 n.3 (N.D. Ga. 2005) (where there was no proof or discussion regarding ship and acceptance dates, invoice payment terms up to and including 30 days found to be timely). Wendell also relies on Stowe Potato Sales, Inc. v. Terry's, Inc., which, like the instant case, involved post-delivery invoices that contained "Net 30" payment terms. 224 B.R. 329, 332 (W.D. Va. 1998). There, the district court expressly noted that the maximum time for payment is 30 days after *receipt and acceptance* of the produce. Yet it went on to hold, without discussion or analysis, that the case did not involve a question of timeliness because there was "no evidence that [plaintiff] could not enforce its right to payment if an *invoice* [sent after delivery] was not paid within 30 days." Id. at 333-34 (emphasis added).

Even were this Court inclined to disregard binding Circuit Court authority, Wendell's cited cases do not call into question American Banana's thoughtful and persuasive

7

reasoning because those courts either were not presented with, or did not consider, circumstances where the seller offered a term of payment *in excess* of 30 days. Finding in favor of Wendell here would render PACA's 30-day maximum meaningless, and, though PACA was drafted to protect the seller, would raise the untenable possibility that a buyer could be found to have violated the Act before the payment term offered by the seller expired.

### C.     Weis-Buy Farms' Objections

Weis-Buy commenced an action in district court, on October 22, 2008, asserting claims against Defendant for PACA violations and breach of contract. Case No. 08-CV-780A. Soon thereafter, the parties reached a settlement agreement, memorialized in a court order on November 20, 2008, whereby Defendant would made weekly payments of $7,000 for fifteen weeks until the judgment amount of $105,000 was satisfied. Id. Dkt. No. 20. Defendant made seven payments prior to filing for bankruptcy. Thereafter, Weis-Buy submitted a PACA claim in the bankruptcy court adversary proceeding for $56,000.00, plus interest, and for attorneys' fees and collection costs. Judge Kaplan determined that the district court's order in 08-CV-780 supports a PACA claim for $56,000.00 with interest at 18 percent per annum, but does not support a claim for attorneys' fees and collection costs.

Weis-Buy objects, asserting that acceptance of the Bankruptcy Judge's Report and Recommendation will result in "a 'new' judgment for a reduced amount instead of just leaving the final the [sic] District Court Judgment alone, as required" under the doctrine of *res judicata*.

It is clear that Defendant defaulted when it failed to make all of the weekly payments required by the consent judgment entered in district court. Judge Kaplan has confirmed the validity of that judgment and found that the balance owed, plus interest, qualifies for PACA trust protection. Weis-Buy does not explain how this will result in a new judgment, how its recovery will be diminished,[3] or how this determination conflicts with the prior district court consent order. As such, Weis-Buy has failed to articulate any valid basis for its objections.

Defendant does not respond in any meaningful way to Weis-Buy's objection. Instead, it disputes the entirety of paragraph 12 of the Report and Recommendation. Defendants documents were not filed as objections, nor are they captioned as objections. Nevertheless, this Court has considered the arguments presented and finds no basis to reject Judge Kaplan's recommendation.

## IV. CONCLUSION

This Court accepts the findings and recommendations in Bankruptcy Judge Kaplan's August 17, 2012 Report and Recommendation (Docket No. 1), for the reasons stated therein, and the further reasons given above.

## V. ORDERS

IT HEREBY IS ORDERED that the Report and Recommendation (Docket No. 1) is ACCEPTED;

---

[3] To the extent there may not be sufficient trust funds to fully satisfy all PACA claims, such that Weis-Buy recovers only a proportional share of the trust, it does not argue that the consent order gives it priority over other PACA creditors.

FURTHER, that the Objections by Wendell Roberson Farms, Inc. (Docket No. 3) are DENIED;

FURTHER, that the Objections by Weis-Buy Farms, Inc. (Docket No. 5) are DENIED;

FURTHER, that the Clerk of the Court is directed to close this case.


SO ORDERED.


Dated: November 10, 2012
      Buffalo, New York

                                       /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                            Chief Judge
                                  United States District Court